## THE BELLE OF OREGON.[1]

*(District Court, E. D. New York. March 8, 1884.)*

SEAMEN—CONTRACT TO SEND THEM HOME—DAMAGES—MITIGATION.

Where natives of the Philippine islands shipped as seaman on an American vessel at Iloilo for a voyage to New York, and the master bound himself to return them to their country at his expense, and the men left the vessel at New York without objection, no provision being made for their remaining on board, and afterwards the master offered to the boarding-house man at whose house the men were that the men should return to the vessel and go in her to Portland, Oregon, *held*, that on the proof the men did not desert the vessel at New York, and were not bound to remain on board her; that under the agreement the men were to be sent home direct, and not by way of Oregon, and that no offer had been shown to send them home, even via Oregon; that there had been, therefore, a violation of the contract on the part of the vessel, and the vessel was liable for the damages that the libelants might have sustained, to be ascertained by a reference. As a matter of protection to the foreign sailors, the vessel was allowed now to provide them with a passage home, and to show this in mitigation of damages.

In Admiralty.

*Beebe & Wilcox*, for libelants.

*W. H. Field*, for claimant.

[1] Reported by R. D. & Wyllys Benedict, of the New York bar.

BENEDICT, J. On the twenty-seventh of August, 1883, at Iloilo in the Philippine islands, the libelants, "natives of these islands," shipped as seamen on board the American bark Belle of Oregon. A written agreement was entered into with them, in which, among other things, it was provided that "the contract of the sailors aforesaid is only for the voyage from this port to the port of New York;" and it was also provided that the master "further binds himself to return at his expense to their country the said sailors." Thereafter the bark proceeded to New York, and there safely arrived, the libelants having duly performed their duty during the voyage. After the vessel was in her berth, and the decks cleared up, all the crew left the vessel, including the libelants. No objection was made to the libelants leaving the vessel, nor was there any provision made for their remaining on board, or their return to their country. After some days it would seem that the master was willing that the men should return to the bark and was willing to take them in the bark to Portland, Oregon, to which port the bark was about to proceed from New York. It is not proved that this offer was brought home to the sailors, it apparently having been considered by the ship sufficient, as decidedly it was not, to make the offer to the boarding-house man, at whose house the men are boarding.

On the part of the ship it is contended that the men deserted in New York, and a consul's certificate to that effect is produced. But the proof is beyond dispute that the men left the bark without objection, if not by the direction of the master. Besides, they had the right to leave the ship when they did, for the voyage was ended. The covenant on the part of the master to return them to their country did not bind them to remain on board the vessel after the completion of the voyage.

Next, it is contended that the men have had the opportunity to return to their country in the same vessel, and have refused to do so. This defense is not proved. At the most, all that has been done is to offer to take the men in the bark to Portland, Oregon, whither, as it appears, the vessel proceeds from New York. The contract, as I incline to think, is a contract to send the men from New York to the Philippine islands direct; and an offer to take the men to the Philippine islands, via Portland, Oregon, would not, therefore, be a fulfillment of the agreement. The case contains nothing from which it can be inferred that any other voyage was contemplated at the time of hiring than a voyage from Iloilo to New York, and thence back direct. But if this be otherwise, and a voyage home by the way of Oregon be held to be within the meaning of the contract, then it is to be said that no offer to send the men home via Portland has been shown. There is no evidence that the bark intends to proceed from Oregon to the Philippine islands. All the offer made was to give the men a passage in the bark from New York to Oregon, with the chance of a passage thence to their country. Such an offer was no tender of

performance of the contract. The men are not bound to go to Oregon, and take the chance of being left there if the bark should go elsewhere than to the Philippine islands, as, for aught that appears, she will do. No other conclusion is therefore possible, upon this evidence, than that a violation of the contract on the part of the bark has been shown, because of the failure to provide the libelants with a passage to their native country, from which arises a liability to pay any damages that the libelants may have sustained thereby. What the amount of that damage is may be ascertained by a reference. But, as a matter of protection to to these foreign sailors, I will allow the ship, if it be so desired in her behalf, now to provide the men with a passage to the Philippine islands, and to show such provision made in mitigation of damages.